UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

SHARON FAYE WARD,

      Petitioner,

v.                                    Case No.  3:15cv71/LC/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 1).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 14).  Petitioner has not replied although invited to do so. (*See* Doc. 15).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter. Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the petition should be denied.

## BACKGROUND AND PROCEDURAL HISTORY

On June 23, 2011, petitioner was convicted by jury verdict of three counts of trafficking in illegal drugs (hydrocodone), in Escambia County Circuit Court Case Nos. 10-CF-2746, 10-CF-3529, and 10-CF-3530.  (Doc. 14, Exs. E, F).[1]  Petitioner was adjudicated guilty and sentenced to a total term of 25 years imprisonment.[2]  (Ex. F).  The Florida First District Court of Appeal ("First DCA") affirmed the judgment on July 31, 2012, per curiam and without a written opinion.  *Ward v. State*, 93 So. 3d 1020 (Fla. 1st DCA 2012) (Table) (copy at Ex. L).

On September 28, 2012, petitioner filed a motion for reduction or modification of sentence under Florida Rule of Criminal Procedure 3.800(c).  (Ex. Y).  The state circuit court summarily denied the motion on October 9, 2012.  (*Id.*).

On December 10, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Ex. M).  The state circuit court struck the motion as facially insufficient with leave to amend.  (Ex. N). Petitioner filed an amended Rule 3.850 motion on March 26, 2013, (Ex. O), and a "supplemental" Rule 3.850 motion on June 14, 2013 (Ex. P).  The circuit court

---

[1] All references to exhibits are to those provided at Doc. 14.

[2] Petitioner was sentenced to concurrent terms of 25 years imprisonment in Case Nos. 10-CF-2746 and 10-CF-3530, and to a concurrent term of 3 years imprisonment with credit for 324 days of time served in Case No. 10-CF-3529.

dismissed petitioner's supplemental Rule 3.850 motion as facially insufficient, with leave to amend.  (Ex. Q).  Petitioner filed an amended supplemental Rule 3.850 motion on August 8, 2013.  (Ex. R).  The state court denied all postconviction motions (the March 26, 2013, June 14, 2013, and August 8, 2013 motions) without an evidentiary hearing.  (Ex. S).  The First DCA affirmed, per curiam and without a written opinion.  *Ward v. State*, 141 So. 3d 185 (Fla. 1st DCA 2014) (Table) (copy at Ex. W).  The mandate issued July 25, 2014.  (Ex. W).

Petitioner filed her federal habeas petition on February 20, 2015.  (Doc. 1, p. 12).  The petition presents three claims of ineffective assistance of trial counsel. (Doc. 1, pp. 4-7).  Respondent asserts that petitioner cannot challenge her conviction in Case No. 10-CF-3529, because she does not satisfy the "in custody" requirement for federal habeas jurisdiction due to her sentence having expired prior to commencement of this action.  (Doc. 14, p. 6).  Respondent asserts that as to petitioner's remaining convictions, each of petitioner's claims fails because the state court's rejection of the claim was consistent with clearly established federal law, and was based on a reasonable determination of the facts.  (*Id.*, pp. 16-40).

JURISDICTION TO REVIEW CONVICTION IN CASE NO. 10-CF-3529

A federal district court may entertain a habeas corpus petition only from a petitioner "in custody in violation of the Constitution or laws or treaties of the United

States."   28 U.S.C. § 2241(c)(3); *see also* 28 U.S.C. § 2254(a).  This "in custody"

requirement is jurisdictional.   *Stacey v. Warden, Apalachee Corr. Inst*., 854 F.2d

401, 403 (11th Cir. 1988).  To satisfy the "in custody" requirement, "the habeas

petitioner [must] be 'in custody' under the conviction or sentence under attack at the

time [her] petition is filed."  *Maleng v. Cook*, 490 U.S. 488, 490-91, 109 S. Ct. 1923,

104 L. Ed. 2d 540 (1989); *see also Id.*, 490 U.S. at 491 ("We have never held . . .

that a habeas petitioner may be "in custody" under a conviction when the sentence

imposed for that conviction has fully expired at the time his petition is filed.").  As

the Court in *Maleng* emphasized:  "While we have very liberally construed the 'in

custody' requirement for purposes of federal habeas, we have never extended it to

the situation where a habeas petitioner suffers no present restraint from a

conviction." *Id.* at 492.

Petitioner was sentenced on June 23, 2011, to 3 years of imprisonment with

credit for 324 days of time served in Case No. 10-CF-3529, upon her conviction for

trafficking in hydrocodone on June 2, 2010.  (Exs. B2, E, F).  Petitioner does not

dispute that that sentence fully expired prior to her filing her habeas petition three

years and eight months later on February 20, 2015.   Although courts have

traditionally interpreted the "in custody" requirement liberally to include situations

where the sentence in question enhances or delays the commencement of another

sentence, that circumstance does not exist here, because all of petitioner's sentences ran concurrently.   The sentence in Case No. 10-CF-3529 had no effect on the commencement of petitioner's other sentences.   Petitioner does not allege, and nothing in the record suggests, that petitioner is under any "present restraint" attributable to her conviction and sentence in Case No. 10-CF-3529.

As it is evident from the record that petitioner was no longer "in custody" under the conviction in Case No. 10-CF-3529 at the time she filed her federal habeas petition, this court is without jurisdiction to consider any challenge to that conviction and sentence.  *See Maleng, supra*; *see also e.g., Diaz v. State of Fla. Fourth Judicial Circuit ex rel. Duval Cnty.*, 683 F.3d 1261, 1264-65 (11th Cir. 2012) (holding that habeas petitioner, who was currently in federal custody, was not "in custody" pursuant to the state judgment subject to his collateral attack at the time he filed his habeas petition as required for federal habeas jurisdiction; petitioner filed his habeas petition eight months after his state sentence fully expired, petitioner was not currently under any present restraint attributable to his state conviction, and any grant of relief would not serve to accelerate petitioner's release from his present federal confinement).

## CLAIMS CHALLENGING CONVICTIONS
## IN CASE NOS. 10-CF-2746 AND 10-CF-3530

<u>Section 2254 Standard of Review</u>

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3] The appropriate test was described by Justice O'Connor as follows:

---

[3]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as

---

parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants: "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's

claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."  *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceeding." 28 U.S.C. § 2254(d)(2). The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the

Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't of Corr.*, 638 F.3d. 739 (11th Cir. 2011). However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See Panetti*, 551 U.S. at 954. Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a). "If this standard is difficult to meet, that is because it was meant to be." *Richter*, 562 U.S. at 102.

Clearly Established Federal Law Governing Claims of Ineffective Assistance of Counsel

All of petitioner's claims involve instances where petitioner asserts trial counsel was ineffective. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052,

80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.   The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.   466 U.S. at 687.   "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.   "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." *Cullen v. Pinholster*, 563 U.S. 170, 189, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).   "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.   "[T]he absence of evidence cannot overcome the strong

presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must

guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

Petitioner's Claims

> Ground One       "Ms. Ward was denied effective assistance of counsel when her trial counsel wa[i]ved her right to confront her accuser."  (Doc. 1, pp. 4-5).

Petitioner claims trial counsel was ineffective for misadvising her to waive her right to confront a prosecution witness, Deputy Jason Gilmore.  Petitioner explains that the prosecution requested that Deputy Gilmore be allowed to testify by telephone; that petitioner agreed to allow telephonic testimony only after counsel reassured her it would not affect her cross-examination of Gilmore; but that during Gilmore's telephonic testimony counsel "made no attempt to cross examine."  (Doc. 1, p. 4).  Petitioner describes the effect of counsel's conduct as follows:

> Therefore, by trial counsel's lack of cross examining, Defendant's right to confront her accuser was violated.  Defendant's 6th Amendment reflex preference [sic] that a Defendant cross examine the adverse witness face to face thereby permitting the finders affect [sic] to evaluate the witnesses [sic] credibility.  This was not available for this witness because he testified by telephone.

(*Id.*, p. 5).   Respondent asserts that the state court's rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*, and was not based on an unreasonable determination of the facts.   (Doc. 14, pp. 17-26).

Petitioner raised this claim as Ground One of her Rule 3.850 motion dated March 26, 2013.   (Ex. O, pp. 25-30).[4]   There, petitioner provided additional facts to support her allegation of prejudice, namely, that had counsel not persuaded her to waive her right of confrontation, Deputy Gilmore would not have testified because the State was reluctant to reveal Gilmore's face due to his involvement in active narcotics investigations and the trial judge informed the State that he would not allow Gilmore to testify with his face concealed unless petitioner waived her right of confrontation.   Petitioner asserted in state court that Gilmore was one of the State's most crucial witnesses, because he testified to the following facts surrounding the confidential informant's purchases of drugs from petitioner:   that the CI was searched before and after the buys; that the CI was wired with a recording device; that the CI was given recorded funds (money provided by the sheriff's office) to make the purchases; that Gilmore drove the CI on two different occasions to petitioner's home; and that each time, the CI exited Gilmore's vehicle, entered

---

[4] References to page numbers within exhibits are to those appearing at the far bottom center of the page.

petitioner's residence, exited petitioner's residence after the buys, returned directly to Gilmore's vehicle, and gave the pills she purchased to Gilmore.  (Ex. O, pp. 25-30).

The state circuit court denied relief on the merits.  The circuit court summarized the trial evidence, including Deputy Gilmore's testimony, and provided this reasoning for denying relief:

> **Ground One –** The Defendant first alleges that her attorney was ineffective as a matter of law when [s]he waived her right to confront her accuser by not objecting to Jason Gilmore testifying at trial by phone.  According to the Defendant's motion, had her attorney objected, Mr. Gilmore would have been prevented from testifying and the outcome of the trial would have been different.

> A claim of ineffective assistance of trial counsel is reviewed under the test as outlined in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).  Under this standard, a defendant is not entitled to relief unless he or she can show that his attorney's performance was both deficient and that her or she was prejudiced by the alleged deficiency.  In order to demonstrate prejudice under <u>Strickland</u>, the defendant must show that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

> The Confrontation Clause of the Sixth Amendment provides that in criminal cases the accused has the right to be confronted with witnesses against them.  The Confrontation Clause as defined by the Sixth Amendment reflects a "preference" that a defendant cross-examine the adverse witness face-to-face, thereby permitting the finder of fact to evaluate the witness's credibility.FN7  The right to physically confront an accuser, however, is not absolute and is subject to harmless error analysis.FN8

FN7  Maryland v. Craig, 497 U.S. 836 (1990).

FN8  Blanton v. State, 978 So. 2d 149 (Fla. 2008).

The Court has examined the testimony of Deputy Gilmore and finds that he was identified, placed under oath, and subject to cross-examination.  Even, however, if it was error to allow him to testify by telephone, the Defendant cannot show prejudice as other witnesses corroborated Gilmore's testimony.  As noted, Deputy Frydrychowicz testified that he monitored the confidential informant [Ms. Maddox] before and after each purchase.FN9  He said that he obtained pills that were purchased by Ms. Maddox as part of the controlled purchases. Jason Young also testified about the search of the informant prior to the controlled purchase.FN10  Ms. Maddox, although she did not recall the events, acknowledged that she had assisted the deputies in their investigation and that her voice was on the recordings played for the jury.FN11  When the Defendant's home was searched by investigators, they found Lortabs as well as money used by Ms. Maddox to buy the drugs.FN12

FN9  T. 106-109.

FN10  T. at 147-151.

FN11  T. at 167.

FN12  T. at 113-114.

Since there was other, substantial, testimony presented at trial showing that the Defendant was guilty of the charged crimes, the Court finds that the failure to object to Deputy Gilmore's testimony was not prejudicial and that the outcome of the proceedings would not have been different but for the alleged error.  This claim, accordingly is denied.

(Ex. S, pp. 55-57).  The First DCA summarily affirmed (Ex. W).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claim. *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, 1235 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision), *petition for cert. filed*, No. 16-6855 (U.S. Nov. 15, 2016).   Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*."   *Wilson* at 1235.   The *Richter* test provides that "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief."   *Richter*, 562 U.S. at 98.   "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court."   *Id.* at 102.

Here, under the *Richter* test, petitioner must establish there was no reasonable basis for the Florida First DCA to affirm the denial of relief on her ineffective assistance claim.   In reviewing the reasonableness of the First DCA's decision, this

court may, but is not required to, look to the reasoning of the state court below (the state circuit court).  The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends.  In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable.  But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

834 F.3d at 1239.

Petitioner does not dispute any facts; therefore, any claim for relief must be based on whether the state court's ruling was contrary to, or an unreasonable application of, clearly established federal law.  As petitioner concedes, (doc. 1, p. 4), the record confirms that she personally waived her right to have Deputy Jason Gilmore appear in person to testify at trial:

> THE COURT:  All right.  Please be seated, folks.  All right.  Ms. Alverson [defense counsel], have you had a chance to talk to your client about the confrontation issue?
>
> MS. ALVERSON:  Yes, Your Honor, I have discussed it with her; her family was present.  I believe she has made her own decision, irrespective of what I believe or her family believes.  Although, she understands that she has a confrontation right, she has no objection to the person appearing by phone.
>
> THE COURT:  All right.  Ma'am, would you raise your right hand to be sworn.

(Defendant sworn)

THE COURT:  What is your name?

THE DEFENDANT:  Sharon Faye Ward.

THE COURT:  Ms. Ward, the State has requested that one of its witnesses for the State, which will be testifying for the State and against you, appear by telephone.  You have a constitutional right to require that witnesses present [sic] in the courtroom.  In other words, you have a right of confrontation of any witness that is going to be testifying against you.  Your attorney has indicated that you're going to waive that right.  Is that what you want to do this morning, ma'am?

THE DEFENDANT:  Yes, ma'am [sic].

THE COURT:  Have you had sufficient time to discuss the issue with your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  Have you carefully weighed the advice of your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  Has anybody forced, coerced, or threatened you into electing to waive this confrontation right?

THE DEFENDANT:  No, sir.

THE COURT:  What you are telling me is you have made that decision freely and voluntarily of your own will; is that correct?

THE DEFENDANT:  Yes, sir.

THE COURT:  All right.  The Court is going to find that the defendant independently has made the decision to waive the right of confrontation

> with regard to the one State's witness.  The Court will allow her to exercise that waiver right. . . .

(Ex. D2, pp. 85-87).  The court need not address whether petitioner's waiver was the product of deficient advice, because the state court reasonably concluded petitioner failed to establish prejudice.

The prejudice prong of *Strickland* requires petitioner to show that the likelihood of a different verdict was "substantial, not just conceivable."  *Richter*, 562 U.S. at 112.  The state circuit court reasonably concluded that petitioner failed to establish she was prejudiced by Gilmore testifying telephonically as opposed to in person, because she failed to show a reasonable probability the jury would have assessed Gilmore's credibility differently, given that other witnesses corroborated his testimony.  The state court also reasonably concluded that petitioner failed to establish she was prejudiced by losing the opportunity to prevent Gilmore from testifying, because even without Gilmore's testimony, the jury still would have convicted her based on the substantial remaining evidence of guilt, namely, the other law enforcement witnesses' testimony concerning the same essential facts of the controlled buys and search of petitioner's residence, the CI's testimony, petitioner's post-*Miranda* admission that all the pills found in her home were hers, and the physical evidence admitted at trial.

The testimony of Deputy Gilmore was brief and limited, comprising only 6 pages of the trial transcript.  (Ex. D2, pp. 181-186).  The state circuit court accurately summarized Gilmore's testimony, which followed Deputy Frydrychowicz's testimony and presented the same essential facts concerning the controlled buys.

Deputy Frydrychowicz testified that he was the lead investigator on the case involving petitioner.  (Ex. D2, p. 103).  The sheriff's office employed a confidential informant, Pamela Maddox, to conduct an undercover buy.  (*Id.*).   Maddox had contacted the sheriff's office on May 27, 2010, stating that she knew of people selling narcotics at a residence.  (*Id.* at 105).  Maddox gave the sheriff's office petitioner as a subject.  (*Id.*).  Deputy Frydrychowicz showed Ms. Maddox a picture of petitioner.  Maddox confirmed that the drug seller she was referring to was petitioner.  (*Id.* at 129-130, 133).  On May 28, 2010, a controlled buy was made by Pamela Maddox at petitioner's residence located at 313 Massachusetts Avenue.  (*Id.* at pp. 104-106).  Deputy Frydrychowicz explained that "we had an undercover officer driving the confidential informant due to the fact that she [the CI] didn't have a license or vehicle."  (*Id.* at 106).  Frydrychowicz testified that they all met beforehand at a predetermined location; that the CI was searched "to make sure she didn't have any drugs or money on her to go into the residence", and that the CI was then wired with a microphone and provided recorded money.  (*Id.* at 106).  The CI

was sent "into the residence where she made a control buy" and, afterwards, "once she came out, she provided the undercover officer, who was driving her[,] with the narcotics." (*Id.* at 106). Frydrychowicz then met the undercover officer and the CI at the first predetermined location, where he took custody of the drugs. (*Id.*). Frydrychowicz testified that during the controlled buy at petitioner's residence on May 28, 2010, Maddox purchased 40 Lortabs with $200.00 of recorded money. (*Id.*). Frydrychowicz took control of the 40 Lortabs and placed them into evidence. (*Id.* at 107). Frydrychowicz identified the Xeroxed buy money used to purchase the 40 Lortabs. (*Id.* at 108). The same process was used for the controlled buy that occurred on June 2, 2010. (*Id.* at 109-110).

Deputy Frydrychowicz testified that on both May 28, and June 2, 2010, he followed the undercover officer and CI to petitioner's residence and did not lose sight of the CI. (Ex. D2, pp. 118, 120). Frydrychowicz then obtained a search warrant for 313 Massachusetts Avenue. (*Id.* at 112). The search warrant was executed on June 17, 2010, resulting in the officers finding and seizing prescription narcotics, including hydrocodone, and $60 of the recorded buy money from the June 2, 2010 buy. (*Id.* at 113-115). Ms. Maddox did not appear to be on drugs during these controlled buys. (*Id.*, pp. 116-118, 131). Maddox appeared to be logical and coherent. (*Id.* at 131). Maddox told Frydrychowicz that the person she purchased

the Lortabs from on May 28, 2010, and June 2, 2010, was Sharon – the same Sharon whom Maddox had previously described to Deputy Frydrychowicz as the person selling narcotics out of 313 Massachusetts Avenue, and whom Maddox confirmed to Deputy Frydrychowicz as being Sharon Faye Ward.  (*Id.*, pp. 129, 133-34). Frydrychowicz testified about the photographs that were taken and offered as exhibits.  (*Id.*, pp. 197-210).

Deputy Gilmore testified that he drove CI Maddox to 313 Massachusetts Avenue on May 28, 2010.  Gilmore saw Maddox go in the front door.  Maddox stayed inside for several minutes and came back to the vehicle, where she handed over a quantity of pills to Gilmore.  Gilmore gave the pills to Deputy Frydrychowicz. Gilmore performed the same duties for the June 2, 2010 controlled buy by Maddox. (Ex. D2, pp. 181-187).

Given the largely cumulative nature of Deputy Gilmore's testimony, and the other, substantial evidence of petitioner's guilt revealed by the trial transcript, the state circuit court reasonably concluded that petitioner failed to establish a reasonably probability of acquittal had counsel not advised petitioner to waive her right to confront Deputy Gilmore in person.  The state circuit court's evaluation of petitioner's claim provides at least one reasonable basis on which the First DCA could have concluded that petitioner failed to establish prejudice under *Strickland*.

As to counsel's failure to cross-examine Deputy Gilmore, although petitioner is correct that counsel did not cross-examine the deputy, (Ex. D2, p. 186), petitioner provides no specific allegations demonstrating that counsel's decision was objectively unreasonable or prejudicial.  The Eleventh Circuit has held that "[t]he decision as to whether to cross-examine a witness is 'a tactical one well within the discretion of the defense attorney,'" and "[a]bsent a showing of 'a single specific instance where cross-examination arguably could have affected the outcome of . . . the trial,' the petitioner is unable to show prejudice necessary to satisfy the second prong of *Strickland*."  *Fugate v. Head*, 261 F.3d 1206, 1219 (11th Cir. 2001) (citation omitted).  Given counsel's vigorous cross-examination of Deputy Frydrychowicz and the other law enforcement witnesses, and petitioner's failure to identify any single instance where cross-examination of Gilmore arguably could have resulted in acquittal, the First DCA reasonably could have concluded that petitioner failed to establish deficient performance or prejudice with regard to counsel's decision not to cross-examine Deputy Gilmore.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two         "Ms. Ward was denied effective assistance of counsel when trial counsel erred by not filing a Motion to Suppress on the ground that the C.I. was not effectively searched prior to the controlled purchase." (Doc. 1, pp. 5-6).

Petitioner claims counsel was ineffective for failing to move to suppress evidence obtained from the controlled buys on the grounds that the CI Pamela Maddox was not properly searched prior to and after the buys. Petitioner's particular complaint is that Maddox was "visually searched", i.e., the deputies "stood in front of the C.I. giving instructions on how to search herself while they watched", but Maddox was not strip searched or patted down. Petitioner asserts that the search failed to control "what the C.I. may or may not have had on her person" during each controlled buy. (Doc. 1, pp. 5-6). Petitioner emphasizes that she is not challenging the search of her home or the seized evidence because that search was legal; rather, she is challenging only the search of the CI and the pills obtained from the controlled buys. (*Id.*, p. 6). Petitioner argues that "[h]ad counsel filed this motion and motion been granted evidence would have been suppressed thereby changing the states [sic] burden of proof and changing charges against Defendant." (*Id.*). Respondent asserts that the state court's rejection of this claim was not contrary to, and did not involve an unreasonable application of the *Strickland* standard. (Doc. 14, pp. 26-34).

Petitioner raised this claim – counsel's failure to file a motion to suppress the pills obtained from the controlled buys on the ground of inadequate search of the CI

– as Ground Two of her Rule 3.850 motion dated March 26, 2013.  (Ex. O, pp. 30-32).  The state circuit court denied relief (Ex. S, pp. 57-58), and the First DCA summarily affirmed (Ex. W).

Applying *Richter*'s presumption that the First DCA's decision was an adjudication on the merits, *id.*, 562 U.S. at 98, the First DCA reasonably could have concluded that the lack of a hands-on search of the CI before and after the controlled buys did not provide a viable legal basis for counsel to move to suppress the pills obtained from the buys as "illegally obtained".  Petitioner did not identify in state court, nor does she here, the legal authority for her proposed motion to suppress.  A finding that the Fourth Amendment did not provide a viable basis for suppression is reasonable.[5]

Without a valid legal basis on which counsel could have sought exclusion of the pills under the Florida Evidence Code or the United States Constitution, this court cannot say that the First DCA's rejection of petitioner's ineffective assistance

---

[5] The Fourth Amendment to the United States Constitution provides, in relevant part:  "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."  U.S. Const. amend IV.  The state circuit court determined that petitioner lacked standing to assert a Fourth Amendment challenge to the search of the CI.  (Ex. S, pp. 57-58 ("The Court finds that the defendant has no standing to contest the procedure used by the officers with respect to how they prepared their confidential informant." (*citing United States v. Salvucci*, 448 U.S. 83, 100 S. Ct. 2547 (1980) (overruling the "automatic standing" rule of *Jones v. United States*, 362 U.S. 257 (1960) – that any person charged with a possessory offense could challenge the search in which the incriminating evidence was obtained – and limiting such Fourth Amendment claims to those persons who had a reasonable expectation of privacy in the area or object of the search))).

claim was unreasonable.  *See, e.g., Zakrzewski v. McDonough*, 455 F.3d 1254, 1260 (11th Cir. 2006) ("To obtain relief where an ineffective assistance claim is based on trial counsel's failure to file a timely motion to suppress, a petitioner must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim [or other identified legal basis for suppression] is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." (*citing Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S. Ct. 2574, 2582-83 (1986) (emphasis added)).

The pills law enforcement obtained from the CI after the controlled buys were relevant to material facts in issue at trial.  *See* Fla. Stat. §§ 90.401 and 94.402. Absent legal authority for petitioner's contention that the evidence was "illegally obtained", counsel cannot be ineffective for failing to move to suppress it.  *See Freeman v. Attorney Gen. Fla.*, 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim. . . ."); *Brownlee v. Haley*, 306 F.3d 1043, 1066-67 (11th Cir. 2002) (counsel was not ineffective for failing to raise non-meritorious issue); *Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

At best, petitioner's argument goes to the weight of the evidence, not its admissibility; yet the trial transcript confirms that trial counsel reasonably challenged the adequacy and reliability of the search and preparation of the CI by cross-examining Deputy Frydrychowicz (Ex. D pp. 115-118), cross-examining Deputy Young (Ex. D2, pp. 147-151), and arguing the issue to the jury during closing argument. (Ex. D2, pp. 307-308). The First DCA had a reasonable basis to decide that counsel was not ineffective for failing to file petitioner's proposed motion to suppress.

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard. Nor was the decision based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three   "Ms. Ward was denied effective assistance of counsel when her trial counsel erred by failing to ask for a lesser included jury instructions [sic] for 'straight possession.'" (Doc. 1, p. 7).

Petitioner's final claim is that trial counsel was ineffective for failing to request a jury instruction on the lesser offense of possession. Petitioner alleges:

Counsel was fully aware of Defendant's charges and the minimum mandatory punishment by law if the Defendant was found guilty. There is no way that this lack of request could prove to be a competent tactical decision. The Judge as well as the State referenced the possibility of adding this lesser charge. Defense counsel states "it was my

understanding we are asking for all or none".  At no time did counsel stop to discuss this important decision with Defendant.  Had defendant had the opportunity to make this decision herself she would have without question agreed to include a lesser charge of possession.  If the lesser charge had been included there is a reasonable probability that the jury would of [sic] chosen the lesser charge.

(Doc. 1, p. 7).  Respondent asserts that the state court's rejection of this claim was not contrary to and did not involve an unreasonable application of *Strickland*.  (Doc. 14, pp. 34-40).

Petitioner raised this claim as Ground Three of her Rule 3.850 motion dated March 26, 2013.  (Ex. O, pp. 32-36).  The state circuit court identified the *Strickland* standard and denied relief as follows:

> **Ground Three** – The Defendant claims that counsel erred by failing to asking [sic] for a lesser jury instruction for "straight possession."  Had a lesser offense been requested, the Defendant claims, she would not have received a substantial prison sentence.  As noted, Strickland requires that there exists a "reasonable probability" that, but for counsel's ineffectiveness, the result of the proceeding would have been different.  The Defendant was charged with two counts of trafficking in hydrocodone, more than 28 grams but less than 30 kilograms, along with one count of trafficking in hydrocodone, more than 4 grams but less than 14.  She was convicted on all three counts as charged in the information.
>
> The Defendant's claim that the jury, having convicted her as charged on three separate counts of drug trafficking, would somehow have convicted her of a lesser offense had they had the opportunity, is unpersuasive.  Essentially, the Defendant is arguing that the jury would have exercised its pardon power had it been presented with lesser offenses to consider.  The Court finds that the Defendant's claim, as it is purely speculative, must fail as she cannot show prejudice.  In

> addition, the failure to request a lesser offense so that the jury may
> exercise its pardon power has been found to be insufficient to support
> a claim of ineffective assistance of counsel.

(Ex. S, p. 58) (footnotes omitted).  The First DCA summarily affirmed.  (Ex. W).

Petitioner does not dispute any facts; therefore, any claim for relief must be based on whether the state court's ruling was an unreasonable application of the *Strickland* standard.  The state circuit court was reasonable in concluding that petitioner failed to establish she was prejudiced by counsel's not requesting a jury instruction on possession.  The jury returned a verdict of guilty of trafficking in hydrocodone on each of the three counts, as charged.  (Ex. E).  There is no reasonable probability the jury here, which found every element of the charged offenses proved beyond a reasonable doubt, would have, given the opportunity, ignored its own findings of fact and the trial court's instructions on the law, and found petitioner guilty of the lesser offense of possession.  The jury was instructed by the trial court that in order to return a guilty verdict the State must prove each element of the crime of trafficking in a controlled substance beyond a reasonable doubt, and that if the State did not prove every element beyond a reasonable doubt, they must return a verdict of not guilty.  (Ex. D2, pp. 314-319).  The jury was also instructed, correctly, on the elements of trafficking in a controlled substance, and on the State's burden of proof.  (*Id.*).  It is presumed that jurors follow their instructions. *See, e.g., Weeks v.*

*Angelone*, 528 U.S. 225, 234, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000) ("A jury is

presumed to follow its instructions." (*citing Richardson v. Marsh*, 481 U.S. 200,

211, 107 S. Ct. 1702, 95 L. Ed. 2d 176 (1987))); *Brown v. Jones*, 255 F.3d 1273,

1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are

presumed to follow the court's instructions." (*citing Ingram v. Zant*, 26 F.3d 1047,

1053 (11th Cir. 1994))).

Petitioner's allegation that had the jury been instructed on the lesser offense

of possession, the outcome of the trial would have been different, is pure speculation

that the jury would have exercised its pardon power.  The mere possibility of a jury

pardon cannot form the basis for a finding of prejudice under *Strickland*.  As the

Supreme Court said in *Strickland*:

> In making the determination whether the specified errors resulted
> in the required prejudice, a court should presume, absent challenge to
> the judgment on grounds of evidentiary insufficiency, that the judge or
> jury acted according to law.  An assessment of the likelihood of a result
> more favorable to the defendant must <u>exclude</u> the possibility of
> arbitrariness, whimsy, caprice, "nullification," and the like.  A
> defendant has no entitlement to the luck of a lawless decisionmaker,
> even if a lawless decision cannot be reviewed.  The assessment of
> prejudice should proceed on the assumption that the decisionmaker is
> reasonably, conscientiously, and impartially applying the standards that
> govern the decision.

466 U.S. at 694-695 (emphasis added); *see also, e.g., Harris v. Crosby*, 151 F. App'x

736, 738 (11th Cir. 2005) (holding that habeas petitioner's assertion – that he would

have been convicted of the lesser included offense, as opposed to the greater offense, if counsel had requested a jury instruction on the lesser offense – was "pure speculation", and was insufficient to undermine confidence in the outcome of his trial).

The state court's rejection of petitioner's claim was not contrary to, and did not involve an unreasonable application of, the *Strickland* standard.  Petitioner is not entitled to federal habeas relief on Ground Three.

CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this

term) (citation omitted).   Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the judgment of conviction and sentences in *State of Florida v. Sharon Faye Ward*, Escambia County Circuit Court Case Nos. 10-CF-2749, 10-CF-3529 and 10-CF-3530, be DISMISSED for lack of subject matter jurisdiction to the extent it challenges petitioner's conviction in Case No. 10-CF-3529, and DENIED to the extent it challenges petitioner's convictions in Case Nos. 10-CF-2749 and 10-CF-3530.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 14th day of December, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.